William M. Hogg (SBN 338196)
Michael A. Josephson*
Andrew W. Dunlap*
**JOSEPHSON DUNLAP LLP**
11 Greenway Plaza, Suite 3050
Houston, Texas 77046
Tel: (713) 352-1100; Fax: (713) 352-3300
whogg@mybackwages.com
mjosephson@mybackwages.com
adunlap@mybackwages.com

Richard J. (Rex) Burch*
**BRUCKNER BURCH PLLC**
11 Greenway Plaza, Suite 3025
Houston, Texas 77046
Tel: (713) 877-8788
rburch@brucknerburch.com

\* - *Pro hac vice* forthcoming

*Counsel for Plaintiff and the Putative Class Members*

## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| **RANIE SHRECKENGOST**, Individually and for Others Similarly Situated,<br><br>      Plaintiff,<br><br>v.<br><br>**SWCA, INCORPORATED**, an Arizona for-profit corporation,<br><br>      Defendant. | Case No. **2:23-CV-01617-KJM-KJN**<br><br>**FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATIONS OF:**<br><br>(1)   Failure to Pay for All Hours Worked (Cal. Lab. Code § 510);<br>(2)   Failure to Pay Overtime (Cal. Lab. Code § 510);<br>(3)   Failure to Authorize and Permit and/or Make Available Meal and Rest Periods (Cal. Lab. Code §§ 226.7 and 512);<br>(4)   Failure to Provide Timely and Accurate Itemized Wage Statements (Cal. Lab. Code § 226);<br>(5)   Failure to Reimburse for Necessary Business Expenditures (Cal. Lab. Code § 2802);<br>(6)   Waiting Time Penalties (Cal. Lab. Code §§ 201-203); and<br>(7)   Unlawful Business Practices (Cal. Bus. & Prof. Code §§ 17200 *et seq.*).<br><br>**DEMAND FOR JURY TRIAL** |

**SUMMARY**

1. Ranie Shreckengost ("Shreckengost") brings this class action to recover unpaid wages and other damages from SWCA, Incorporated ("SWCA").

2. SWCA employed Shreckengost as a non-exempt, hourly-paid worker in and around Sacramento, California.

3. SWCA paid Shreckengost and the Class Members by the hour.

4. But SWCA failed to pay Shreckengost and the Class Members for all hours worked.

5. Instead, SWCA paid Shreckengost and the Class Members for billable hours worked plus a limited number of "administrative" hours, which do not reflect the actual hours worked by Shreckengost and the Class Members.

6. Indeed, SWCA does not track or record the actual number of hours worked by Shreckengost and the Class Members.

7. SWCA likewise regularly deducts 30-minutes per shift (and sometimes 1-hour per shift when Shreckengost and the Class Members work more than 10 hours in a day) from Shreckengost's and the Class Members' recorded work time to account for unpaid meal periods.

8. Despite deducting these blocks of time from Shreckengost's and the Class Members' work time, SWCA uniformly fails to provide these employees with compliant, wholly off-duty meal periods.

9. SWCA also fails to provide Shreckengost and the Class Members with compliant, wholly off-duty rest periods.

10. Instead, SWCA uniformly requires Shreckengost and the Class Members to remain on-duty and to perform compensable work throughout their shifts and fails to provide them with *bona fide*, timely, and compliant meal and rest periods.

11. SWCA has no system, policy, or practice in place to ensure that Shreckengost and the Class Members receive timely and compliant meal and rest periods.

12. SWCA's failure to provide Shreckengost and the Class Members with *bona fide* meal and rest periods violates the meal and rest period provisions of the California Labor Code and applicable IWC Wage Orders. *See* CAL. LAB. CODE §§ 226.7 and 512; IWC Wage Order No. 17.

13.     Despite depriving Shreckengost and the Class Members of their required meal and rest periods, SWCA uniformly fails to pay these employees the required one hour of premium pay (at their regular rates) for each day SWCA denied them an off-duty meal or rest period in violation of California law. *See* CAL. LAB. CODE § 226.7(c); IWC Wage Order No. 17.

14.     Additionally, SWCA requires Shreckengost and the Class Members to incur various work-related expenses for which SWCA does not reimburse these workers.

15.     Primarily, SWCA requires Shreckengost and the Class Members to incur gas costs when they use their personal vehicles to travel from the office to their field assignments and back.

16.     Despite knowing that Shreckengost and the Class Members use their personal vehicles for such work-related travel, SWCA does not reimburse Shreckengost and the Class Members for their gas costs.

17.     As a result of its illegal policies, SWCA also violates the accurate wage statement provisions of the California Labor Code and applicable IWC Wage Orders by depriving Shreckengost and the Class Members of wage statements that accurately reflect (1) all hours actually worked, (2) all wages actually earned, (3) all premium pay for missed meal and rest periods earned, and (4) all deductions applied. *See* CAL. LAB. CODE § 226; IWC Wage Order No. 17-2001(7).

18.     Likewise, as a result of its illegal policies, SWCA also violates the waiting time provisions of the California Labor Code and applicable IWC Wage Orders by depriving the Class Members that have left their employment with SWCA (like Shreckengost) of all wages earned upon separation. *See* CAL. LAB. CODE §§ 201-203

19.     Finally, SWCA's illegal employment practices violate California's Unfair Competition Law ("UCL") by practicing, employing, and utilizing the employment practices outlined above by knowingly denying the Straight Time Employees: (1) overtime wages; (2) double time wages; (3) accurate itemized wage statements; (4) compliant meal and rest periods and associated penalty pay; and (3) waiting time penalties. *See* CAL. BUS. & PROF. CODE §§ 17200, *et seq.*

///

///

**JURISDICTION & VENUE**

20.     This Court has original subject matter jurisdiction over this action pursuant to the jurisdictional provisions of the Class Action Fairness Act, 28 U.S.C. § 1332(d) (CAFA).

21.     Specifically, (a) the matter in controversy exceeds $5,000,000; (b) at least one member of Shreckengost's Putative Class and SWCA are citizens of different states (indeed, Shreckengost is domiciled in Pennsylvania, and SWCA is domiciled in Arizona); and (c) the Putative Class exceeds 100 members.

22.     This Court has specific personal jurisdiction over SWCA with respect to this action because SWCA employed Shreckengost and the Class Members in California.

23.     Venue is proper because a substantial portion of the events or omissions giving rise to this action occurred in this District and Division. 28 U.S.C. § 1391(b)(2).

24.     Specifically, SWCA employed Shreckengost in and around Sacramento, California, which is in this District.

**PARTIES**

25.     Shreckengost worked for SWCA as a Field Biologist in and around Sacramento, California from approximately August 2021 until May 2022.

26.     Throughout her employment, SWCA paid Shreckengost on an hourly rate basis.

27.     SWCA initially informed Shreckengost that she would be paid straight time for all hours worked, including overtime hours.

28.     SWCA, however, did not track the actual number of hours Shreckengost worked.

29.     Instead, SWCA paid Shreckengost for her billable hours, which did not reflect her actual hours worked.

30.     SWCA directed Shreckengost to report hours that were "billable" to SWCA's client(s), rather than report all hours actually worked.

31.     SWCA further directed Shreckengost not to report too many hours spent on various administrative tasks, such as document preparation, printing, organizing materials, getting equipment put together, picking up a rental car, and other various office tasks, that were not directly billable to

1    SWCA's client.

2        32.    SWCA had knowledge that Shreckengost worked these additional hours because SWCA

3    rated Shreckengost on her "bill-ability," meaning SWCA expected that 95% of Shreckengost's reported

4    hours would be billable to SWCA's client.

5        33.    If Shreckengost included too many administrative tasks into her billed hours, SWCA

6    would reprimand her and direct her not to include those hours in future timesheets.

7        34.    SWCA further expected that Shreckengost would not report all of her time spent driving

8    from the office to her field assignments and back.

9        35.    Instead, SWCA only paid Shreckengost for the estimated drive time as reflected in Google

10   Maps (or similar online map platform) directions. Those estimated drive times, however, did not

11   accurately reflect the actual drive time with traffic and other natural delays.

12       36.    Further, throughout her employment, SWCA failed to provide Shreckengost with

13   compliant meal and rest periods.

14       37.    SWCA did not exercise any oversight and/or did not attempt to ensure that Shreckengost

15   received meal or rest breaks during which she was fully relieved of her job duties.

16       38.    SWCA knew Shreckengost did not receive compliant meal or rest periods because

17   Shreckengost worked as a biologist in the field, which made it impractical for her and others like her to

18   take meal or rest breaks during which they were fully relieved of her work duties.

19       39.    Even though SWCA did not provide Shreckengost with compliant and fully-relieved meal

20   breaks, SWCA automatically deducted Shreckengost's meal periods from her pay.

21       40.    SWCA also failed to pay Shreckengost the required one hour of premium pay (at her

22   regular rate) each day SWCA denied her a compliant meal and/or rest period.

23       41.    SWCA also required Shreckengost to incur various work-related expenses and did not

24   reimburse those business expenditures.

25       42.    For example, in August and September of 2021 and in April and May of 2022, SWCA

26   required Shreckengost to incur gas costs for use of her personal vehicle during her work-related drives

27   from the office to the field.

28

43.    But SWCA did not reimburse Shreckengost for her necessarily incurred gas-related expenses, which were on average $200 per week.

44.    Throughout her employment, SWCA failed to provide Shreckengost with accurate, itemized wage statements.

45.    The wage statements provided by SWCA did not include all hours worked by Shreckengost, all wages and premium paid earned by Shreckengost, and did not reflect all deductions of pay (such as the automatic meal break deductions).

46.    After Shreckengost's employment with SWCA ended, SWCA did not pay Shreckengost all wages earned, due, and owing.

47.    Shreckengost brings this action on behalf of herself and all other similarly situated employees in California.

48.    The Putative Class(es) of similarly situated employees is defined as:

> **All current and former hourly-paid, non-exempt employees of SWCA who worked in California from August 4, 2019 through final resolution of this Action (the "Class Members" or "Putative Class Members.").**

49.    SWCA is an Arizona for-profit corporation that maintains its headquarters and principal place of business in Phoenix, Arizona. Upon information and belief, SWCA does business in California under the trade name "SWCA Environmental Consultants."

50.    SWCA may be served with process by serving its registered agent: **CT Corporation System, 330 North Brand Boulevard, Suite 700, Glendale, California 91203**.

## FACTUAL ALLEGATIONS

51.    "SWCA is a global environmental consulting firm"[1] with operations across the country, including in California:[2]

---

[1]    https://www.swca.com/ (last visited July 27, 2023).
[2]    https://www.swca.com/who-we-are/locations (last visited July 27, 2023).

52.     To meet its business objectives, SWCA hires workers, like the Class Members, who it assigns to provide services to its clients.

53.     SWCA pays Class Members on an hourly basis.

54.     SWCA routinely schedules Class Members to work more than 40 hours a week.

55.     SWCA, however, fails to pay Class Members for all hours worked.

56.     Instead, SWCA pays Class Members for their billable time, rather than their actual hours worked.

57.     Shreckengost and the Class Members routinely work additional hours beyond those reflected in their billable reported time.

58.     For example, Shreckengost worked 10-to-11 hours per day on average during the summer months. However, Shreckengost's billable hours would only reflect, on average, 8-to-8.5 hours worked during that time period.

59.     Shreckengost's additional un-recorded hours were spent on various administrative tasks necessary for Shreckengost to perform her job, such as preparing materials, getting her equipment together, picking up a rental car, and driving from the office to the field.

60.     Upon information and belief, Class Members similarly worked additional hours that were

1    not reflected in their billed work time.

2    61.    SWCA knew or should have known that Shreckengost and Class Members were working

3    such additional hours because SWCA set "bill-ability" expectations for these workers.

4    62.    For example, SWCA's "bill-ability" expectation for Shreckengost was that 95% of her

5    recorded work time would be billable to, and collected from, SWCA's client.

6    63.    SWCA had similar "bill-ability" benchmarks for Class Members.

7    64.    SWCA, however, limited the amount of administrative tasks that Shreckengost and the

8    Class Members could submit on their billed hours and would reprimand/discipline Class Members if

9    they reported too many administrative task-related hours.

10    65.    SWCA's "bill-ability" benchmarks encouraged workers like Shreckengost and the Class

11    Members to under-report their actual number of hours worked so that they could meet their "bill-ability"

12    benchmark requirements.

13    66.    While exact job titles and job duties may differ, these employees are subjected to the same

14    or similar illegal pay practices for similar work.

15    67.    For example, Shreckengost worked for SWCA as a Field Biologist in and around

16    Sacramento, California from approximately August 2021 until May 2022.

17    68.    As a Field Biologist, Shreckengost's primary responsibilities included collecting data and

18    information from plants and wildlife before and during construction projects, conducting environmental

19    surveys, and completing reports on the same.

20    69.    Shreckengost worked at least 8 on-the-clock hours per day nearly every day worked.

21    70.    Shreckengost worked at least 40 on-the-clock hours nearly every week worked.

22    71.    However, Shreckengost worked additional time on top of those reported hours that has

23    gone unpaid by SWCA.

24    72.    For example, during the week of September 12, 2021 through September 18, 2021,

25    Shreckengost worked 40 on-the clock hours consisting of 5 workdays of 8 on-the-clock hours per shift.

26    73.    However, Shreckengost actually worked 10-to-11 hours per shift on average during that

27    week, resulting in at least 10 hours of unpaid overtime wages.

28

74.    Similarly, during the week of April 24, 2022 through April 30, 2022, Shreckengost worked 40 on-the-clock hours consisting of 5 workdays of 8 on-the-clock hours per shift.

75.    However, Shreckengost actually worked 10-to-11 hours per shift on average during that week, resulting in at least 10 hours of unpaid overtime wages.

76.    Upon information and belief, Class Members similarly worked additional hours that SWCA did not pay as a result of SWCA's "bill-ability" policy or practice.

77.    Indeed, Shreckengost and the Class Members typically work 8-to-12 hours a day, for at least 5 days a week.

78.    As a result of SWCA's failure to accurately track/record the actual hours worked by Shreckengost and the Class Members, as well as SWCA's "bill-ability" benchmark requirements, SWCA fails to pay Shreckengost and the Class Members for all hours worked, including overtime and double time hours.

79.    In addition to depriving Shreckengost and the Class Members of all wages owed (including overtime and double time wages), SWCA also uniformly fails to provide these employees with compliant, off-duty, *bona fide* meal and rest periods.

80.    Indeed, SWCA simply assumes Shreckengost and the Class Members receive *bona fide* meal and rest breaks each shift they work.

81.    SWCA also automatically deducts 30-minute blocks of time from Shreckengost's and the Class Members' reported work time to account for unpaid meal breaks.

82.    For example, if Shreckengost reported working 8.5 billable hours in a given day, SWCA would deduct one 30-minute block of time and only pay Shreckengost for 8 hours. If Shreckengost reported working 11 billable hours in a given day, SWCA would deduct a full hour of time and would only pay Shreckengost for 10 hours.

83.    Upon information and belief, SWCA applied similar automatic meal break deductions to the Class Members.

84.    But SWCA fails to provide Shreckengost and the Class Members with *bona fide* meal and rest periods during which Shreckengost and Class Members are fully relieved of all work duties.

85.     SWCA knows, or should know, that Shreckengost and the Class Members are not able to be fully relieved of all work duties during their purported meal and rest periods, because SWCA is aware that Shreckengost and the Class Members work in the field and cannot readily take fully relieved breaks while on assignment.

86.     Upon information and belief, SWCA does not have any mechanism or monitoring process in place to meet its obligation of ensuring Shreckengost and the Class Members are provided timely breaks and/or that Shreckengost and the Class Members are fully relieved of all work duties during their breaks.

87.     SWCA also does not schedule, or attempt to schedule, meal breaks for Shreckengost and the Class Members within their first 5 hours of work.

88.     Similarly, SWCA does not schedule, or attempt to schedule, rest periods for Shreckengost and the Class Members within their first 4 hours of work.

89.     SWCA simply assumes (wrongly) that Shreckengost and the Class Members can find a time during their shifts to take breaks.

90.     Shreckengost and the Class Members do not actually receive *bona fide* meal or rest periods.

91.     Indeed, during any attempted meal or rest period, Shreckengost and the Class Members are not free to engage in personal activities.

92.     Rather, during any attempted "meal break" or "rest break," Shreckengost and the Class Members are necessarily forced to substantially perform their regular duties and responsibilities.

93.     Shreckengost and the Class Members routinely spend their "meal breaks" and "rest breaks" performing work for SWCA's—not these employees'—predominant benefit.

94.     Despite knowing it fails to provide these employees with compliant meal and rest periods, SWCA also uniformly fails to pay Shreckengost and the Class Members the mandatory one hour of premium pay (at their regular rates) for each day they are denied compliant meal and/or rest periods in violation of California law.

95.     SWCA also fails to reimburse all business expenditures incurred by Shreckengost and the Class Members.

96.     For example, SWCA requires Shreckengost to drive from the office to the field and back using her personal vehicle in order to perform her job as a Field Biologist.

97.     As a necessary result of driving from the office to the field and back using her personal vehicle, Shreckengost has to pay for gas out of her pocket in order to do her job as a biologist.

98.     SWCA knows Shreckengost drives to and from her field work as a necessary part of her job for SWCA.

99.     SWCA, however, does not reimburse Shreckengost for her gas costs.

100.     Upon information and belief, SWCA likewise does not reimburse Class Members for their various business expenditures such as gas when Class Members use their personal vehicles to drive to the field and back.

101.     Further, SWCA's common course of wage-and-hour abuses includes routinely failing to maintain true and accurate pay and timekeeping records for Shreckengost and the Class Members.

102.     In particular, SWCA fails to track or record the actual number of hours worked by Shreckengost and the Class Members.

103.     SWCA further fails to include all pay earned by Shreckengost and the Class Members onto their itemized wage statements for all hours worked, including overtime and double time pay, due to SWCA's illegal "bill-ability" timekeeping system and automatic meal break deduction scheme.

104.     SWCA further fails to include all premium pay owed to Shreckengost and the Class Members onto their itemized wage statements for non-compliant meal and rest periods

105.     SWCA further fails to list all deductions, such as automatic meal break deductions, on Shreckengost's and the Class Members' itemized wage statements.

106.     Thus, SWCA uniformly fails to provide Shreckengost and the Class Members with accurate, itemized wage statements that accurately reflect their hours worked, wages actually earned (as well as their meal and rest period premium pay), and deductions in violation of California law.

107.     Finally, due to SWCA's illegal pay practices discussed herein, SWCA uniformly fails to provide Members who have left their employment with SWCA (like Shreckengost) with full payment of all wages owed at the end of their employment in violation of California law.

1    108.    As Class Members are owed unpaid overtime wages and premium wages when their

2    employment ends, and these amounts remain unpaid under SWCA's uniform policies and practices,

3    SWCA uniformly fails to pay all wages due upon termination in violation of California law.

4    109.    As a result, SWCA is subject to waiting time penalties.

5    110.    SWCA's violations of California law were willful, carried out in bad faith, and caused

6    significant damage to Shreckengost and the Class Members.

7                        **RULE 23 CLASS ACTION ALLEGATIONS**

8    111.    Shreckengost incorporates all other paragraphs by reference.

9    112.    Shreckengost brings her claims as a class action on behalf of herself and the Class Members

10   pursuant to FED. R. CIV. P. 23.

11   113.    Class Members are uniformly victimized by SWCA's pay and timekeeping schemes, which

12   are in willful violation of California law.

13   114.    Other Class Members worked with Shreckengost and indicated they were paid in the same

14   manner, performed similar work, and were subject to SWCA's pay and timekeeping schemes.

15   115.    Based on her experience with SWCA, Shreckengost is aware SWCA's illegal practices were

16   imposed on the Class Members.

17   116.    The Class Members are similarly situated in all relevant respects.

18   117.    Even if their precise job duties and locations might vary, these differences do not matter

19   for the purposes of determining their entitlement to unpaid wages, overtime, and other damages.

20   118.    SWCA's uniform timekeeping and pay schemes render Shreckengost and the Class

21   Members similarly situated for the purposes of determining their right to unpaid wages, overtime (and

22   double time) pay, and other damages.

23   119.    SWCA's records reflect each time that it automatically deducted meal break(s) from

24   Shreckengost and the Class Members.

25   120.    Upon information and belief, SWCA does not have any mechanism and/or does not

26   exercise any oversight to make sure Shreckengost and the Class Members take meal or rest periods at

27   the appropriate times throughout their workdays.

28

121.    Upon information and belief, SWCA does not have any mechanism and/or does not exercise any oversight to ensure that Shreckengost and the Class Members can take breaks during which they are fully relieved of all work duties.

122.    SWCA knows or should know that Shreckengost and the Class Members cannot realistically take timely or compliant meal or rest periods given the nature of their work in the field.

123.    SWCA treats Class Members similarly in failing to reimburse those workers for various business expenses such as gas costs when Class Members use their personal vehicles to drive to and from their field assignments.

124.    SWCA also utilizes a uniform wage statement format common to Shreckengost and the Class Members.

125.    The back wages and damages owed to Shreckengost and the Class Members can be calculated using simple formulas applied to the same records.

126.    Even if the issue of damages were somewhat individual in character, the damages can be calculated by reference to SWCA's records, and there is no detraction from the common nucleus of liability facts.

127.    Therefore, the issue of damages does not preclude class treatment.

128.    Shreckengost's experiences are therefore typical of the experiences of the Class Members.

129.    Shreckengost has no interest contrary to, or in conflict with, the Class Members that would prevent class treatment.

130.    Like each Class Member, Shreckengost has an interest in obtaining the unpaid wages and other penalties owed under California law.

131.    A class action, such as the instant one, is superior to other available means for fair and efficient adjudication of the lawsuit.

132.    Absent this class action, many Class Members will not obtain redress for their injuries, and SWCA will reap the unjust benefits of violating California law.

133.    Further, even if some of the Class Members could afford individual litigation, it would be unduly burdensome to the judicial system.

134.    Concentrating the litigation in one forum will promote judicial economy and consistency, as well as parity among the Class Members' claims.

135.    The questions of law and fact that are common to each Class Member predominate over any questions affecting solely the individual members.

136.    Among the common questions of law and fact are:

    a.    Whether SWCA applied a "bill-ability" benchmark to Shreckengost and the Class Members;

    b.    Whether SWCA failed to accurately track Shreckengost's and the Class Members' actual hours worked;

    c.    Whether SWCA instructed or expected Shreckengost and Class Members to report hours that would ultimately be billed to SWCA's client rather than report all hours actually worked;

    d.    Whether SWCA failed to pay Shreckengost and Class Members for all hours worked;

    e.    Whether SWCA had any mechanism, oversight, or made other efforts to ensure Shreckengost and the Class Members were taking meal and rest periods at the appropriate times during their workdays;

    f.    Whether SWCA had any mechanism, oversight, or made other efforts to ensure Shreckengost and the Class Members were relieved of all work duties during their meal and rest periods;

    g.    Whether Shreckengost and the Class Members received *bona fide* meal periods and/or rest periods;

    h.    Whether SWCA paid Shreckengost and the Class Members premium pay for untimely and/or non-compliant meal or rest periods;

    i.    Whether SWCA automatically deducted meal periods from Shreckengost's and the Class Members' reported work time;

    j.    Whether SWCA reimbursed all business expenditures, including gas when Shreckengost and the Class Members use their personal vehicles to travel from the

office to the field and back;

k.   Whether SWCA failed to provide Shreckengost and the Class Members with accurate, itemized wage statements;

l.   Whether SWCA failed to provide Shreckengost and the Class Members who have left their employment with SWCA of all their earned wages upon separation;

m.   Whether SWCA's violations of the California Labor Code resulted from a continuing course of conduct;

n.   Whether SWCA's violations of California law were willful; and

o.   The proper formula for calculating restitution, damages and penalties owed to Shreckengost and the Straight Time Employees as alleged herein.

137.   Shreckengost knows of no difficulty that will be encountered in the management of this litigation that would preclude its ability to go forward as a class action.

138.   As part of its regular business practices, SWCA intentionally, willfully, and repeatedly engaged in a pattern, practice, and/or policy of violating California labor laws with respect to the Class Members.

139.   SWCA's illegal straight time for overtime pay scheme deprived Shreckengost and the Class Members of all wages (including premium overtime and double time wages), premium pay, and business expense reimbursements they are owed under California law.

**SWCA'S VIOLATIONS OF CALIFORNIA LAW WERE WILLFUL AND/OR DONE IN RECKLESS DISREGARD OF CALIFORNIA LAW**

140.   Shreckengost incorporates all other paragraphs by reference.

141.   SWCA knew it was subject to the California Labor Code and applicable IWC Wage Order's provisions.

142.   SWCA knew California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including the Class Members, for all hours worked.

143.   SWCA knew California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including the Class Members, overtime wages at rates not less than 1.5 times their regular rates of pay for all hours worked after 8 in a workday and 40 in a workweek.

144.    SWCA knew California Labor Code and applicable IWC Wage Order(s) required it to pay non-exempt employees, including the Class Members, double time wages at rates not less than 2 times their regular rates of pay for all hours worked after 12 in a workday and 8 on their seventh consecutive workday.

145.    SWCA knew, or should have known, that each Class Member worked hours beyond their reported "billable" hours.

146.    SWCA knew, or should have known, that by setting "bill-ability" benchmarks for the Class Members and limiting the number of administrative tasks that could count toward such billable hours, the Class Members regularly and routinely performed work that was not captured on their reported "billable" hours.

147.    SWCA knew, or should have known, that each Class Member regularly worked more than 8 hours in a least one workday and/or 40 hours in at least one workweek during the 4 years before this lawsuit was filed because it expected and required these workers to do so.

148.    SWCA knew the Class Members were its hourly employees.

149.    SWCA knew it paid the Class Members on an hourly basis.

150.    SWCA knew it automatically deducted 30-minute blocks of time from Class Members' reported work time to account for unpaid meal periods.

151.    SWCA knew, or should have known, that Class Members did not receive timely or compliant meal periods as a foreseeable result of their work duties in the field.

152.    SWCA's decision not to accurately track or record the actual number of hours worked by Shreckengost and the Class Members evinces that SWCA's wage violations are willful and knowing.

153.    Likewise, SWCA's failure to pay Shreckengost and the Class Members for all hours worked, for all overtime compensation owed, and/or all premium pay owed was neither reasonable, nor was the decision made in good faith.

154.    SWCA knew the California Labor Code and applicable IWC Wage Order(s) required it to authorize, permit and/or make available *bona fide* meal and rest periods to its employees, including Shreckengost and the Class Members.

155.    SWCA knew it failed to provide Shreckengost and the Class Members with *bona fide* meal and rest periods.

156.    SWCA knew the California Labor Code and applicable IWC Wage Order(s) required it to ensure that Shreckengost and the Class Members take timely meal and rest periods.

157.    SWCA knew it failed to ensure Shreckengost and the Class Members received timely meal and rest periods.

158.    SWCA knew Shreckengost and the Straight Time Employees did not actually receive timely or compliant meal and rest breaks.

159.    Thus, SWCA knew, should have known, or showed reckless disregard for the fact it failed to authorize, permit and/or make available compliant meal and rest periods to Shreckengost and the Class Members in violation of the California Labor Code and applicable IWC Wage Order(s).

160.    SWCA knew the California Labor Code and applicable IWC Wage Order(s) required it to pay employees, including Shreckengost and the Class Members, one hour of premium pay (at their regular rates) for each day these employees are denied an off-duty meal or rest period.

161.    Nonetheless, SWCA failed to pay Shreckengost and the Class Members one hour of premium pay (at their regular rates) for each day it denied these employees with timely and off-duty meal or rest period.

162.    Thus, SWCA knew, should have known, or showed reckless disregard for the fact it violated the meal and rest period premium pay provisions of the California Labor Code and applicable IWC Wage Order(s).

163.    SWCA's failure to provide Shreckengost and the Class Members with compliant meal and rest periods was neither reasonable, nor was the decision not to provide these employees with compliant meal and rest periods made in good faith.

164.    Likewise, SWCA's failure to pay Shreckengost and the Class Members one hour of premium pay for each day they were denied a compliant meal or rest period was neither reasonable, nor was SWCA's decision to not pay these employees one hour of premium pay for each day they were denied a compliant meal or rest period made in good faith.

165.     SWCA knew that the California Labor Code and applicable IWC Wage Order(s) required it to reimburse Shreckengost and the Class Members for all business expenses.

166.     SWCA knew, or should have known, that Shreckengost and the Class Members were not reimbursed for all business expenses, including for gas used in driving their personal vehicles from the office to the field and back.

167.     SWCA's failure to reimburse these necessary business expenses was in willful violation of California wage and hour law.

168.     SWCA knew that it failed to provide Shreckengost and the Class Members with accurate wage statements that accurately reflected their actual hours worked, actual wages earned, meal/rest period premium pay earned, and/or all deductions.

169.     SWCA's failure to provide Shreckengost and the Class Members with accurate wage statements was neither reasonable, nor was the decision not to provide these employees with accurate wage statements made in good faith.

170.     SWCA knew that it failed to pay Shreckengost and the Class Members who left their employment all their earned wages upon separation.

171.     SWCA's failure to pay Shreckengost and the Class Members who ended their employment all their earned wages upon separation was neither reasonable, nor was the decision not to pay these employees all their earned wages upon separation made in good faith.

172.     SWCA knew, should have known, or showed reckless disregard for whether the conduct described in this Complaint violated California law.

173.     Indeed, SWCA has been sued previously by employees for failing to pay overtime wages. *See, e.g., Cook v. SWCA, Inc.*, No. 2:23-CV-00660-DWL (D. Ariz.); *Roberts v. SWCA, Inc.*, No.1:23-CV-00627 (D.N.M.).

### COUNT I
### FAILURE TO PAY FOR ALL HOURS WORKED
### PURSUANT TO CAL. LAB. CODE § 1194
### (Rule 23 Class Action)

174.     Shreckengost incorporates all other paragraphs by reference.

175.     At all relevant times, SWCA was subject to the Labor Code and applicable Wage Orders.

176.    At all relevant times, SWCA was Shreckengost's and each Class Members' "employer" within the meaning prescribed in the Labor Code.

177.    SWCA willfully engaged in and continues to engage in a policy and practice of not compensating Shreckengost and the Class Members for all hours worked.

178.    SWCA expects and/or requires Shreckengost and the Class Members to under-report their hours worked, specifically under-reporting their administrative tasks and other tasks that are not billable to SWCA's client, in order to maintain their "bill-ability" benchmarks that are set by SWCA.

179.    SWCA also automatically deducts 30-minute blocks of time to account for unpaid meal periods, even though SWCA does not ensure that Shreckengost and the Class Members are relieved from all duties during those purported meal periods.

180.    Labor Code § 1194(a) provides as follows:

> Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of his minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

181.    Labor Code § 200(a) defines wages as "all amounts for labor performed by employees of every description, whether the amount is fixed or ascertained by the standard of time, task, piece, commission basis, or other method of calculation."

182.    Labor Code § 1198 makes it unlawful for employees to employee employees under conditions that violate the Wage Orders.

183.    IWC Wage Order 4-2001(2)(K) defines hours worked as "the time during which an employee is subject to the control of an employer, and includes all the time the employee is suffered or permitted to work, whether or not required to do so."

184.    SWCA requires Shreckengost and the Class Members to perform substantial hours of work that are not captured in SWCA's timekeeping records.

185.    SWCA's "bill-ability" policies encourage and/or implore Shreckengost and the Class Members to under-report their actual hours worked and to only report hours that SWCA will ultimately bill its clients.

186.    SWCA's automatic meal break deduction policies routinely result in Shreckengost and the Class Members losing 30-minutes or more from their reported work hours, even though they are working throughout those blocks of time.

187.    In other words, SWCA forces Shreckengost and the Class Members to perform work for the benefit of SWCA without compensation.

188.    In violation of California law, SWCA knowingly and willfully refuses to perform its obligations to provide Shreckengost and the Class Members with compensation for all hours worked.

189.    SWCA regularly fails to track the time Shreckengost and the Class Members actually work and/or fails to compensate them for all hours worked.

190.    SWCA committed, and continues to commit, the acts alleged herein knowingly and willfully, and in conscious disregard of Shreckengost's and the Class Members' rights.

191.    As a direct and proximate result of the aforementioned violations, Shreckengost and the Class Members have been damaged in an amount according to proof at time of trial.

192.    Shreckengost and the Class Members are thus entitled to recover nominal, actual, and compensatory damages, plus interest, attorneys' fees, expenses, and costs of suit.

### COUNT II
### FAILURE TO PAY OVERTIME UNDER CALIFORNIA LAW
### PURSUANT TO CAL. LAB. CODE § 510
### (Rule 23 Class Action)

193.    Shreckengost incorporates all other paragraphs by reference.

194.    Shreckengost brings her overtime claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the Class Members pursuant to FED. R. CIV. P. 23.

195.    At all relevant times, SWCA was subject to the Labor Code and applicable Wage Orders.

196.    At all relevant times, SWCA was Shreckengost's and each Class Member's "employer" within the meaning prescribed in the Labor Code.

197.    At all relevant times, Shreckengost and the Class Members were SWCA's "employees" within the meaning prescribed in the Labor Code.

198.    At all relevant times, Shreckengost and the Class Members were entitled to overtime (and double time) wages under the California Labor Code and applicable IWC Wage Order(s).

199.    Section 510(a) of the California Labor Code provides:

Eight hours of labor constitutes a day's work. Any work in excess of eight hours in one workday and any work in excess of 40 hours in any one workweek and the first eight hours worked on the seventh day of work in any one workweek shall be compensated at the rate of no less than one and one-half times the regular rate of pay for an employee. Any work in excess of 12 hours in one day shall be compensated at the rate of no less than twice the regular rate of pay for an employee.

200.    IWC Wage Order 5-2001(3)(A)(1), & (3) states that employees:

…shall not be employed more than eight (8) hours in any workday or more than 40 hours in any workweek unless the employee receives one and one-half (1½) times such employee's regular rate of pay for all hours worked over 40 hours in the workweek. Eight (8) hours of labor constitutes a day's work. Employment beyond eight (8) hours in any workday or more than six (6) days in any workweek is permissible provided the employee is compensated for such overtime at not less than … [o]ne and one-half (1½) times the employee's regular rate of pay for all hours worked in excess of eight (8) hours up to and including 12 hours in any workday, and for the first eight (8) hours worked on the seventh (7th) consecutive day of work in a workweek…

201.    Section 1194(a) of the California Labor Code further provides:

Notwithstanding any agreement to work for a lesser wage, any employee receiving less than the legal minimum wage or the legal overtime compensation applicable to the employee is entitled to recover in a civil action the unpaid balance of the full amount of this minimum wage or overtime compensation, including interest thereon, reasonable attorneys' fees, and costs of suit.

202.    Section 1198 of the California Labor Code makes it unlawful for employers, like SWCA, to employ employees, including Shreckengost and the Class Members, under conditions that violate any applicable IWC Wage Order(s).

203.    Despite regularly working over 8 hours a day and 40 hours in a workweek as part of their normal and regular schedules, Shreckengost and the Class Members did not receive overtime wages at rates not less than 1.5 times their regular rates of pay for all overtime hours worked.

204.    Despite occasionally working over 12 hours a day and/or 8 hours on a seventh consecutive workday, Shreckengost and the Class Members did not receive double time wages at rates not less than 2 times their regular rates of pay for all double time hours worked.

205.    SWCA's unlawful conduct harmed Shreckengost and the Class Members by depriving them of the overtime and double time wages they are owed.

1    206.    SWCA knowingly, willfully, or in reckless disregard carried out this illegal pattern or

2    practice of failing to pay Shreckengost and the Class Members overtime and double time wages.

3    207.    Accordingly, Shreckengost and the Class Members are entitled to recover the unpaid

4    balance of overtime wages in an amount equal to 1.5 times their regular rates of pay and double time

5    wages in an amount equal to 2 times their regular rates of pay, plus an equal amount as liquidated

6    damages, interest at the highest applicable rates, and attorneys' fees and costs.

7    ## COUNT III
### FAILURE TO AUTHORIZE, PERMIT, AND/OR
### MAKE AVAILABLE *BONA FIDE* MEAL & REST PERIODS
### PURSUANT TO CAL. LAB. CODE §§ 226.7 AND 512
### (Rule 23 Class Action)

8

9

10    208.    Shreckengost incorporates all other paragraphs by reference.

11    209.    Shreckengost brings her meal and rest period claim under the California Labor Code and

12    IWC Wage Order(s) as a class action on behalf of herself and the Class Members pursuant to FED. R.

13    CIV. P. 23.

14    210.    At all relevant times, SWCA was subject to the Labor Code and applicable Wage Orders.

15    211.    At all relevant times, SWCA was Shreckengost's and each Class Member's "employer"

16    within the meaning prescribed in the Labor Code.

17    212.    At all relevant times, Shreckengost and each Class Member was SWCA's "employee"

18    within the meaning prescribed in the Labor Code.

19    213.    At all relevant times, Shreckengost and the Class Members were entitled to timely and

20    compliant meal and rest periods under the California Labor Code and applicable IWC Wage Order(s).

21    214.    Sections 226.7 and 512 of the California Labor Code and applicable IWC Wage Order(s)

22    require employers, like SWCA, to authorize and permit meal and rest periods to their employees,

23    including Shreckengost and the Class Members.

24    215.    Specifically, Sections 226.7 and 512 of the California Labor Code and applicable IWC

25    Wage Order(s) require employers, like SWCA, to provide employees, including Shreckengost and the

26    Class Members, one uninterrupted 30-minute meal period when they work more than 5 hours per day

27    and a second uninterrupted 30-minute meal period when they work more than 10 hours in day.

28

216.    Similarly, Section 226.7 of the California Labor Code and the applicable Wage Orders, also requires employers, like SWCA, to authorize and permit employees, including Shreckengost and the Class Members, to take 10 minutes of net rest time per 4 hours (or major fraction thereof) of work, and to pay employees their full wages during those rest periods.

217.    Unless employees are relieved of all duties during their 30-minute meal period(s) and 10-minute rest period(s), the employees are considered "on duty," and the meal/rest period must be counted as time worked under the applicable IWC Wage Order(s).

218.    Pursuant to Section 226.7(b) of the California Labor Code and applicable IWC Wage Order(s), employers, like SWCA, who fail to provide an employee with a required meal and/or rest period must, as compensation, pay the employee one hour of pay at the employee's regular rate for each day that the meal and/or rest period was not authorized or permitted.

219.    At all relevant times, SWCA routinely failed to make meal periods available to Shreckengost and the Straight Time Employees.

220.    Despite long days regularly lasting in excess of 8, and occasionally 12, hours, Shreckengost and the Class Members are often unable to take a meal break, prevented from timely taking a meal break, are otherwise subject to interruption during their meal breaks, and are frequently interrupted during their attempted meal breaks.

221.    Upon information and belief, SWCA does not take affirmative steps to ensure Shreckengost and the Class Members take meal or rest breaks in a timely manner as required by the California Labor Code.

222.    Upon information and belief, SWCA does not take affirmative steps to ensure Shreckengost and the Class Members are fully relieved of work duties during their meal and rest periods as required by the California Labor Code.

223.    Upon information and belief, SWCA knows or should know that Shreckengost and the Class Members do not receive timely or compliant meal or rest breaks.

224.    Shreckengost and the Class Members are not paid one hour of premium pay for their missed meal breaks as required by California law.

225.    Similar to meal periods, at all relevant times, SWCA regularly failed to make rest periods available to Shreckengost and the Class Members.

226.    When available, if ever, Shreckengost's and the Class Members' rest periods were often not compliant; rather, their rest periods were generally untimely, short, and/or interrupted with work duties.

227.    Shreckengost and the Class Members do not receive premium pay for their missed rest periods as required by California law.

228.    SWCA's conduct described herein violates Labor Code §§ 226.7 and 512.

229.    SWCA's unlawful conduct harmed Shreckengost and the Class Members by depriving them of compliant meal and rest periods, as well as premium pay.

230.    SWCA knowingly, willfully, or in reckless disregard carried out this illegal pattern or practice of failing to provide Shreckengost and the Class Members compliant meal and rest periods and associated premium pay for missed meal and rest periods.

231.    Accordingly, Shreckengost and the Class Members are entitled to compensation for SWCA's failure to authorize, permit, and/or make available meal and rest periods, plus interest, attorneys' fees, expenses and costs of suit.

**COUNT IV**
**FAILURE TO PROVIDE ACCURATE WAGE STATEMENTS**
**PURSUANT TO CAL. LAB. CODE § 226**
**(Rule 23 Class Action)**

232.    Shreckengost incorporates all other paragraphs by reference.

233.    Shreckengost brings her wage statement claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the Class Members pursuant to FED. R. CIV. P. 23.

234.    At all relevant times, SWCA was subject to the Labor Code and applicable Wage Orders.

235.    At all relevant times, SWCA was Shreckengost's and each Class Member's "employer" within the meaning prescribed in the Labor Code.

236.    At all relevant times, Shreckengost and each Class Member was SWCA's "employee" within the meaning prescribed in the Labor Code.

237.    Section 226(a) of the California Labor Code requires employers, like SWCA, to provide accurate itemized wage statements to employees, including Shreckengost and the Class Members, "semimonthly or at the time of each payment of wages" that accurately show:

> (1) gross wages earned, (2) total hours worked by the employee, except as provided in subdivision (j), (3) the number of piece-rate units earned and any applicable piece rate if the employee is paid on a piece-rate basis, (4) all deductions, provided that all deductions made on written orders of the employee may be aggregated and shown as one item, (5) net wages earned, (6) the inclusive dates of the period for which the employee is paid, (7) the name of the employee and only the last four digits of her or his social security number, (8) the name and address of the legal entity that is the employer and, if the employer is a farm labor contractor, as defined in subdivision (b) of Section 1682, the name and address of the legal entity that secured the services of the employer, and (9) all applicable hourly rates in effect during the pay period and the corresponding number of hours worked at each hourly rate by the employee …. The deductions made from payments of wages shall be recorded in ink or other indelible form, properly dated, showing the month, day, and year, and a copy of the statement or a record of the deductions shall be kept on file by the employer for at least three years at the place of employment or at a central location within the State of California.

238.    IWC Wage Order 5-2001(7) establishes similar wage statement requirements.

239.    Section 226(e) of the California Labor Code further provides:

> An employee suffering injury as a result of a knowing and intentional failure by an employer to comply with subdivision (a) is entitled to recover the greater of all actual damages or fifty dollars ($50) for the initial pay period in which a violation occurs and one hundred dollars ($100) per employee for each violation in a subsequent pay period, not exceeding an aggregate penalty of four thousand dollars ($4,000), and is entitled to an award of costs and reasonable attorney's fees.

240.    At all relevant times, SWCA did not provide timely, accurate itemized wage statements to Shreckengost and the Class Members in accordance with Section 226(a) of the California Labor Code and the applicable the IWC Wage Order(s) because the wage statements provided did not accurately reflect, *inter alia*, the actual hours worked, the actual gross wages earned, premium pay earned, actual net wages earned, and/or all deductions applied.

241.    Accordingly, SWCA is liable to Shreckengost and the Class Members for the amounts described above, with interest, as well as attorneys' fees and costs pursuant to Labor Code § 226(e).

/ / /

**COUNT V**
**FAILURE TO REIMBURSE FOR NECESSARY BUSINESS EXPENDITURES**
**PURSUANT TO CAL. LAB. CODE § 2802**
**(Rule 23 Class Action)**

242.    Shreckengost incorporates all other paragraphs by reference.

243.    SWCA does not reimburse Shreckengost and the Class Members for all necessary business expenditures.

244.    Labor Code § 2802 provides, in relevant part.

> An employer shall indemnify his or her employee for all necessary business expenditures or losses incurred by the employee in direct consequence of the discharge of his or her duties, or of his or her obedience to the directions of the employer, even though unlawful, unless the employee, at the time of obeying the directions, believed them to be unlawful. … For the purposes of this section, the term "necessary expenditures or losses" shall include all reasonable costs, including, but not limited to, attorney's fees incurred by the employee enforcing the rights granted by this section.

245.    SWCA regularly requires Shreckengost and the Class Members to pay out of pocket for their gas when using their personal vehicles to travel from the office to the field and back.

246.    SWCA is and was aware that Shreckengost and the Class Members incur these business expenses and yet does not reimburse Shreckengost and the Class Members.

247.    SWCA is liable to Shreckengost and the Class Members for the unreimbursed expenses and civil penalties, with interest thereon.

248.    Shreckengost and the Class Members are further entitled to an award of attorneys' fees and costs.

**COUNT VI**
**WAITING TIME PENALTIES**
**PURSUANT TO CAL. LAB. CODE §§ 201-203**
**(Rule 23 Class Action)**

249.    Shreckengost incorporates all other paragraphs by reference.

250.    Shreckengost brings her waiting time penalties claim under the California Labor Code and IWC Wage Order(s) as a class action on behalf of herself and the other Class Members who have left their employment with SWCA pursuant to FED. R. CIV. P. 23.

251.    At all relevant times, SWCA was subject to the Labor Code and applicable Wage Orders.

252.    At all relevant times, SWCA was Shreckengost's and each Class Member's "employer"

within the meaning prescribed in the Labor Code.

253.    At all relevant times, Shreckengost and each Class Member was SWCA's "employee" within the meaning prescribed in the Labor Code.

254.    Section 201 of the California Labor Code provides: "If an employer discharges an employee, the wages earned and unpaid at the time of discharge are due and payable immediately."

255.    Section 202 of the California Labor Code provides: "If an employee not having a written contract for a definite period quits her or her employment, her or her wages shall become due and payable not later than 72 hours thereafter, unless the employee has given 72 hours previous notice of her or her intention to quit, in which case the employee is entitled to her or her wages at the time of quitting."

256.    Section 203 of the California Labor Code provides, in relevant part:

> If an employer willfully fails to pay, without abatement or reduction, in accordance with Sections 201, 201.5, 202, and 205.5, any wages of an employee who is discharged or who quits, the wages of the employee shall continue as a penalty from the due date thereof at the same rate until paid or until an action therefor is commenced; but the wages shall not continue for more than 30 days.

257.    Shreckengost and certain Class Members left their employment with SWCA during the statutory period, at which time SWCA owed these employees unpaid wages and reimbursement of business expenses.

258.    These earned, but unpaid, wages derive from the unpaid hours worked (including overtime pay and double time pay), premium pay, and unreimbursed business expenses owed by SWCA.

259.    SWCA willfully refused, and continue to refuse, to pay Shreckengost and the Class Members all wages due and owing to them, in the form of unpaid wages, overtime wages, double time wages, premium pay, and unreimbursed business expenses, upon the end of their employment as a result of SWCA's illegal timekeeping and pay scheme.

260.    As a result of SWCA's actions, Shreckengost and the Class Members have suffered, and continue to suffer, substantial losses, including lost earnings and interest.

261.    SWCA's failure to pay Shreckengost and the Class Members the wages due and owing constitute a violation of CAL. LAB. CODE §§ 201-202.

262.    As a result, SWCA is liable to Shreckengost and the Class Members for all penalties owing pursuant to California Labor Code §§ 201-203.

263.    Additionally, California Labor Code § 203 provides that an employee's wages will continue as a penalty up to 30 days from the time the wages were due.

264.    Accordingly, Shreckengost and the Class Members are entitled to penalties pursuant to California Labor Code § 203, plus interest.

**COUNT VII**
**VIOLATION OF CALIFORNIA'S UNFAIR COMPETITION LAW**
**PURSUANT TO CAL. BUS. & PROF. CODE §§ 17200, *ET SEQ.***
**(Rule 23 Class Action)**

265.    Shreckengost incorporates all other paragraphs by reference.

266.    Shreckengost brings her UCL claim as a class action on behalf of herself and the Class Members pursuant to FED. R. CIV. P. 23.

267.    California Business and Professions Code § 17200, *et seq.*, prohibits unfair competition in the form of any unlawful, unfair, or fraudulent business acts or practices.

268.    Business and Professions Code § 17204 allows a person injured by the unfair business acts or practices to prosecute a civil action for violation of the UCL.

269.    Labor Code § 90.5(a) states it is the public policy of California to vigorously enforce minimum labor standards in order to ensure employees are not required to work under substandard and unlawful conditions, and to protect employers who comply with the law from those who attempt to gain competitive advantage at the expense of their workers by failing to comply with minimum labor standards.

270.    Beginning at an exact date unknown to Shreckengost, but at least during the 4 years prior to the filing of this lawsuit, SWCA committed acts of unfair competition as defined by the UCL, be engaging in the unlawful, unfair, and fraudulent business acts and practices described in this Complaint, including, but not limited to:

      a.    Violations of Labor Code § 1194 pertaining to unpaid wages;

      b.    Violations of Labor Code § 510 and IWC Wage Order 17-2001 pertaining to overtime and double time wages;

FIRST AMENDED CLASS ACTION COMPLAINT AND JURY DEMAND
*Shreckengost, et al. v. SWCA, Inc.*, Case No. 2:23-CV-01617-KJM-KJN

c.   Violations of Labor Code §§ 226.7 and 512 and IWC Wage Order 17-2001 pertaining to meal and rest periods;

d.   Violations of Labor Code § 2802 pertaining to unreimbursed business expenditures;

e.   Violations of Labor Code § 226 regarding accurate, timely itemized wage statements; and

f.   Violations of Labor Code §§ 201-203 pertaining to waiting time penalties.

271.   SWCA's violations of these California laws and regulations, as well as the fundamental California public policies protecting wages, serve as unlawful predicate acts and practices for purposes of Business and Professions Code §§ 17200, *et seq.*

272.   The acts and practices described above constitute unfair, unlawful and fraudulent business practices, and unfair competition, within the meaning of Business and Professions Code §§ 17200, *et seq.*

273.   Among other things, the acts and practices have taken from Shreckengost and the Class Members wages rightfully earned from them, while enabling SWCA to gain an unfair competitive advantage over law-abiding employers and competitors.

274.   Business and Professions Code § 17203 provides that a court may make such orders or judgments as may be necessary to prevent the use or employment by any person of any practice which constitutes unfair competition.

275.   Injunctive relief is necessary and appropriate to prevent SWCA from repeating the unlawful, unfair, and fraudulent business acts and practices alleged above.

276.   As a direct and proximate result of the aforementioned acts and practices, Shreckengost and the Class Members have suffered a loss of money and property, in the form of unpaid wages which are due and payable to them.

277.   Business and Professions Code § 17203 provides that the Court may restore to any person in interest any money or property which may have been acquired by means of such unfair competition.

278.   Shreckengost and the Class Members are entitled to restitution pursuant to Business and Professions Code § 17203 for all wages and payments unlawfully withheld from them during the 4-year period prior to the filing of this lawsuit.

279.    Shreckengost's success in this action will enforce important rights affecting the public interest and, in that regard, Shreckengost sues on behalf of herself as well as others similarly situated (the Class Members).

280.    Shreckengost and the Class Members seek and are entitled to unpaid wages, declaratory and injunctive relief, and all other equitable remedies owing to them.

281.    Shreckengost takes upon herself enforcement of these laws and lawful claims. There is a financial burden involved in pursuing this action, the action is seeking to vindicate a public right and it would be against the interests of justice to penalize Shreckengost by forcing her to pay attorneys' fees from the recovery in this action.

282.    Attorney's fees are appropriately awarded to Shreckengost pursuant to Code of Civil Procedure § 1021.5 and otherwise.

### RELIEF SOUGHT

283.    WHEREFORE, Shreckengost, individually and on behalf of the Class Members, seeks the following relief:

a.   An Order designating this lawsuit as a class action pursuant to FED. R. CIV. P. 23;

b.   An Order appointing Shreckengost and her counsel to represent the interests of the Class Members;

c.   An Order finding SWCA liable to Shreckengost and the Class Members for their unpaid wages, overtime wages, double time wages, unreimbursed business expenses, liquidated damages, statutory damages, and other penalties owed under the California Labor Code and applicable IWC Wage Order(s);

d.   A Declaratory Judgment that SWCA violated the UCL as a result of the aforementioned violations of the California Labor Code and applicable IWC Wage Orders;

e.   Judgment awarding Shreckengost and the Class Members all unpaid wages, overtime wages, double time wages, compensatory damages, liquidated damages, statutory damages, and other penalties available under the California Labor Code, the applicable

1          IWC Wage Order(s), and/or the UCL;

2          f.    An Order awarding attorney's fees, costs, and expenses;

3          g.    Pre- and post-judgment interest at the highest applicable rates; and

4          h.    Such other and further relief as may be necessary and appropriate.

5

6

7    Date: August 31, 2023                    Respectfully submitted,

8

9                                             /s/ William M. Hogg
                                              William M. Hogg
10                                            Michael A. Josephson*
                                              Andrew W. Dunlap*
11                                            JOSEPHSON DUNLAP LLP

12                                            Richard J. (Rex) Burch*
                                              BRUCKNER BURCH PLLC
13
                                              * - *Pro hac vice* forthcoming
14
                                              *Counsel for Plaintiff and Class Members*
15

16

17

18

19

20

21

22

23

24

25

26

27

28

1

**DEMAND FOR JURY TRIAL**

2          Shreckengost hereby demands a jury trial on all claims and issues, as she and the Class Members

3   are entitled to a jury.

4

Date: August 31, 2023                    Respectfully submitted,

5

6

                                         /s/ William M. Hogg
7                                        William M. Hogg
                                         Michael A. Josephson*
8                                        Andrew W. Dunlap*
                                         **JOSEPHSON DUNLAP LLP**
9
                                         Richard J. (Rex) Burch*
10                                       **BRUCKNER BURCH PLLC**

11                                       * - *Pro hac vice* forthcoming

12                                       *Counsel for Plaintiff and Class Members*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28